**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re:                                                              Chapter 11

LEHR CONSTRUCTION CORP.                                             Case No. 11-10723 (SHL)


                Debtor,
-----------------------------------------------------------------x
JOHANTHAN L. FLAXER, not individually but
solely in his capacity as chapter 11 trustee for
LEHR CONSTRUCTION CORP.,
                                                                    Ad. Pro. No. 13-01256-SHL


                Plaintiff,

     v.

CONTROL RISKS GROUP LLC,

                Defendant.
-----------------------------------------------------------------x

## **MEMORANDUM OF DECISION**

APPEARANCES:

**GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP**
*Attorneys for Jonathan L. Flaxer, Chapter 11 Trustee for Lehr Construction Corp.*
437 Madison Avenue
New York, NY 10022
By:    Douglas L. Furth, Esq.
          Michael S. Weinstein, Esq.


**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
*Attorneys for Defendant Control Risks Group LLC*
30 Rockefeller Plaza
New York, NY 10112
By:    Daniel L. Brown, Esq.
          Malani J. Cademartori, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is a motion (the "Motion") (ECF Nos. 7 & 8) by Defendant Control Risks Group LLC ("Defendant" or "Control Risks") seeking to dismiss the Chapter 11 Trustee Jonathan L. Flaxer's amended complaint (the "**Amended Complaint**") (ECF No. 6) filed in the above-captioned adversary proceeding (the "Adversary Proceeding"). The Amended Complaint alleges that Control Risks breached its contract by (i) failing to fully or properly perform the consulting services that Control Risks had contracted to perform for Debtor Lehr Construction Corporation ("Lehr"), and (ii) failing to properly advise Lehr about whether a "bona fide business-oriented security concern" existed for Lehr's executives. Amended Compl. ¶ 39. Control Risks now seeks dismissal of the Amended Complaint, arguing that: (1) the Trustee failed to allege a particular provision or promise that Control Risks breached; (2) the Trustee has not sufficiently pled proximate cause and cannot plausibly do so; and (3) the Trustee's claims sound in tort law, rather than contracts, and are therefore time-barred. The Trustee opposes the Motion but clarifies that it seeks relief based only on breach of contract, not negligence. For the reasons stated below, the Motion is granted.

## BACKGROUND

The Trustee filed this Adversary Proceeding alleging breach of contract against Control Risks. In April 2013, the Trustee filed the Amended Complaint, changing the alleged amount of damages from $6.2 million to $6.1 million. Amended Compl. ¶ 33. The following facts are alleged in the Amended Complaint.

Lehr is a New York corporation that specialized in interior construction for corporate clientele. Amended Compl. ¶ 5. In or about April 2006, Lehr retained Control Risks, a security consulting company, under a document titled *Proposal to Review Executive Security* (the

2

"Contract").[1]  Amended Compl. ¶¶ 6, 11; *see also* Contract (Amended Compl. Ex. 1) (ECF No. 6-1).  Under the Contract, Control Risks was "to assist [Lehr] in assessing the security/threat exposure of senior executives/board members, review[] [the] applicability of IRS Regulation # 132 and [develop] a formalized Executive Protection Program (EPP) to support such applicability."  Amended Compl. ¶ 13.

IRS Treasury Regulation 132 ("Regulation 132")[2] outlines which fringe benefits, paid by a company on an employee's behalf, can be excluded from the employee's income.  *Id.* at ¶ 14; *see* 26 CFR § 1.132-0 *et seq*.  Regulation 132 discusses certain exclusions for employer-provided transportation where there exists a bona fide business-oriented security concern.  Amended Compl. ¶¶ 14–15; *see* 26 CFR § 1.132-5(m).  "[I]f an employee travels on a personal trip in an employer-provided aircraft for bona fide business-oriented security concerns, the employee may exclude the excess, if any, of the value of the flight over the amount the employee would have paid for the same mode of transportation, but for the bona fide business-oriented security concerns."  Amended Compl. ¶ 15; 26 CFR § 1.132-5(m)(1).

A bona fide business-oriented security concern exists "only if the facts and circumstances establish a specific basis for concern of the employee's safety.  A generalized concern for an employee's safety is not a bona fide business-oriented security concern."  Amended Compl. ¶ 16;

---

[1]    In its papers, Control Risks characterized this document as merely a proposal, but did not dispute the existence of a contract.  *See* Motion at 4 (ECF No. 8).  In any event, the Amended Complaint alleged that Lehr entered into a written contract with Control Risks, Amended Compl. ¶ 37, and the Court must accept as true the allegations in the complaint when evaluating a motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[2]    The parties use the term "Regulation 132" in the Amended Complaint and in their briefs to refer to Treasury Regulation Section 1.132.  For this decision, the Court adopts the parties' terminology and will refer to Treasury Regulation Section 1.132 as "Regulation 132."

26 CFR § 1.132-5(m)(2). The regulation identifies factors that are cause for a security concern.[3]

Amended Compl. ¶ 17; 26 CFR § 1.132-5(m)(2). The regulation further advises

> The value of transportation-related security provided pursuant to a security study that meets the requirements of this paragraph (m)(2)(iv) may be excluded from income if the security study conclusions are reasonable and, but for the bona fide business-oriented security concerns, the employee would not have had such security. No exclusion from income applies to security provided by the employer that is not recommended in the security study.

26 CFR § 1.132-5(m)(2)(iv).

Lehr agreed to pay Control Risks $17,600 to conduct an executive security review (the "Security Review") and determine appropriate security measures. Amended Compl. ¶¶ 11, 13, 34. Pursuant to the Contract, Control Risks was required to provide a written report summarizing its findings and recommendations to Lehr (the "Report"). Amended Compl. ¶ 20; *see also* Report (Amended Compl. Ex. 2) (ECF No. 6-2). On or about July 17, 2006, Control Risks delivered the Report to Lehr. Amended Compl. ¶ 20. The Report concluded that Gerald Lazar and Frederick Coffey, two Lehr executives, "face a higher than usual potential of being a target of various criminal activities," citing several general factors to support that conclusion. Amended Compl. ¶ 21.

The Report recommended that Lehr formalize an executive protection program "for Lazar and Coffey that provided for company-sponsored security transportation, including (i) chauffeured vehicles for both personal and business travel and (ii) use of corporate/chartered aircraft for business reasons that may also be available for personal use." Amended Compl. ¶ 30. The Report was "predicated on [Control Risks'] review as an independent security consultant"

---

[3] Security concerns include threat of death, kidnapping, or serious bodily harm to the employee or a similarly situated employee because of either the employee's status as an employee of the employer or a recent history of violent terrorist activity in the geographic area in which transportation is provided. *See* Amended Compl. ¶ 17; 26 CFR § 1.132-5(m)(2).

and stated that "[Control Risks] feel[s] the program is consistent with the requirements set out under IRS Reg. 132." Amended Compl. ¶ 32. Following the Report, Lehr expended over $6.1 million in private jet travel for Lazar and Coffey. Amended Compl. ¶ 33. The Contract and the Report included a disclaimer stating that "[a]dvice given and recommendations made do not constitute a warranty of future results by any company in the Control Risks group . . . No express or implied warranty is given in respect of any judgment made or to changes or any unforeseen escalation of any factors affecting any such judgment." Contract at 8 (ECF 6-1); Report at 5 (ECF 6-2).[4]

Through the Adversary Proceeding, the Trustee now seeks to recover the $6.1 million the Debtor spent on the executive protection program, alleging in hindsight that the Report failed to provide specific, objective reasons why Lazar and Coffey face a higher risk of violence than any other executive. Amended Compl. ¶ 22.

## DISCUSSION

**A.    Legal Standard**

Rule 8(a) of the Federal Rules of Civil Procedure, made applicable here by Bankruptcy Rule 7008, requires that the complaint contain a "short plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Federal Rule of Civil Procedure 12(b)(6), made applicable by Bankruptcy Rule 7012, provides that a complaint must be dismissed if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). A claim is plausible on its face when

---

[4]    Both the Contract and the Report are attached to the Complaint. As only some sections of the Report have page numbers, citations to the Report refer to the PDF page number for the Report.

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* This plausibility standard requires more than a sheer possibility that a defendant acted unlawfully, yet does not require detailed factual allegations. *Id.*; *see also Eastman Chem. Co. v. Nestlé Waters Mgmt. & Tech.*, 2012 U.S. Dist. LEXIS 141281, at *13–14 (S.D.N.Y. Sept. 28, 2012) (citing *Talley v. Brentwood Union Free Sch. Dist.*, 2009 U.S. Dist. LEXIS 5357, at *11–12 (E.D.N.Y. June 24, 2009)). The court must determine "whether the well-pleaded factual allegations, assumed to be true, plausibly give rise to an entitlement to relief." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (citing *Iqbal*, 556 U.S. at 679).

A Rule 12(b)(6) motion is addressed to the face of the pleading. *Goldman v. Belden*, 754 F.2d 1059, 1065–66 (2d Cir. 1985). Pursuant to Federal Rule of Civil Procedure 10(c), the pleading is deemed to include any document attached to it as an exhibit or any document incorporated in it by reference. *Id.*; *see also Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

An action for a breach of contract under New York law requires proof of: (1) a contract, (2) performance of the contract by one of the parties, (3) a breach by the other party, and (4) damages.[5] *Rexnord Holdings Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994) (citing *Bank Itec N.V. v. J. Henry Schroder Bank & Trust Co.*, 612 F. Supp. 134, 137 (S.D.N.Y. 1985)). Merely stating that the agreement was breached is insufficient to sustain a breach of contract claim. *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008). Under New York law, dismissal of a contract claim is also proper where a plaintiff fails to plead facts from which

---

[5] As the parties both cite New York cases in their briefs, they appear to agree that New York substantive law applies to this dispute.

6

damages attributable to a defendant's conduct might be reasonably inferred. *Arcidiacono v. Maizes & Maizes, LLP*, 778 N.Y.S.2d 270, 270 (App. Div. 1st Dep't 2004).

B.      **The Breach of Contract Claim**

The Defendant argues that dismissal is appropriate because the Trustee failed to allege a particular provision or promise of the Contract that was breached and because the Trustee has not plausibly pled proximate cause. Accordingly, the Court must examine the pleadings to determine whether the Trustee alleges sufficient facts regarding a breach and causation, considering both the Amended Complaint and the terms of the Contract attached to the Amended Complaint. *See Cortec Indus.,* 949 F.2d at 47.

As a threshold matter, Control Risks argues that the Trustee does not and cannot allege any specific provision of the Contract that was breached. The Trustee contends that he need not point to a specific provision, but nonetheless cites several key provisions that Control Risks allegedly did not fully perform. *See* Trustee's Opposition at 7 (ECF No. 14) (citing Amended Compl. ¶¶ 13, 21–31, 39). But the Trustee does not allege, nor does the Court find, any provision in the Contract that required the Report or the recommendations contained therein to comply with Regulation 132 or any other standard. The Contract simply contained a promise to conduct a security review and deliver a report of recommendations, but it did not require any level of specificity. The Trustee only alleges, for example, that Control Risks breached the Contract by "failing to (i) fully or properly perform the consulting services that Control Risks had contracted to perform; [and] (ii) properly advise Lehr concerning whether a 'bona-fide business-oriented security concern' existed with respect to either Lazar or Coffey." Amended Compl. ¶ 39. Similarly, paragraph 13 of the Amended Complaint merely quotes the objective of the Security Review. The other allegations, paragraphs 21 through 31, do not actually refer to

7

the Contract, but rather allege Control Risks' failings in the Report. For example, the Trustee alleges that the Report did not provide specific, objective reasons why Lazar and Coffey faced a heightened security risk. Amended Compl. ¶ 22.

Given these allegations, the Court agrees with the Defendant that the Amended Complaint does not state a cause of action for breach of contract. "[W]here the party rendering services can be shown to have expressly bound itself to the accomplishment of a particular result, the courts will enforce that promise." *Milau Assocs., Inc. v. North Ave. Dev. Corp.*, 42 N.Y.2d 482, 487 (1977) (citing *Robins v. Finestone*, 308 N.Y. 543 (1955); *Frankel v. Wolper*, 169 N.Y.S. 15 (App. Div. 2d Dep't 1918), *aff'd* 228 N.Y. 582). New York does not, however, recognize a cause of action based upon implied warranty where the warranty arises from a contract for services and only economic loss is claimed. *See Fireman's Fund Ins. Co. v. New York Gen. Mech., Inc.*, 1992 U.S. Dist. LEXIS 7481, at *10 (W.D.N.Y. May 22, 1992) (citing *Gordon v. Holt*, 65 412 N.Y.S.2d 534, 537 (App. Div. 4th Dep't 1979); *Held v. 7-Eleven Food Store*, 108 Misc.2d 754, 757 (N.Y. Sup. Ct. 1981)). Where a transaction is predominantly service-oriented, "neither the code nor the common law of this State can be read to imply an undertaking to guard against economic loss stemming from the nonnegligent performance by a construction firm which has not contractually bound itself to provide perfect results." *Milau*, 42 N.Y.2d at 487 (citations omitted).

Much like *Milau*, the Contract here is service-oriented. If the Contract expressly provided a standard or a particular result, then the Trustee might have stated a claim for relief. But New York law does not provide a basis for the Court to read into the Contract an implied warranty to comply with Regulation 132. *Milau*, 42 N.Y.2d at 487. Indeed, the disclaimer in both the Contract and the Report supports the conclusion that no such warranty was intended.

8

Thus, neither the allegations in the Complaint nor the attached contract provide a basis for any express warranty regarding the Report.

The Trustee relies on several New York State cases to argue that allegations of inadequate performance are sufficient to state a claim for breach of contract. *See* Trustee's Opposition at 8 (ECF No. 14) (citing *Cooling Tower Specialties, Inc. v. Yaro Enters., Inc.*, 889 N.Y.S.2d 347 (App. Div. 4th Dep't 2009); *Wiernik v. Kurth*, 873 N.Y.S.2d 673 (App. Div. 2d Dep't 2009); *Westminster Constr. Co. v. Sherman*, 554 N.Y.S.2d 300 (App. Div. 2d Dep't 1990)). Of these cases, only *Cooling Tower Specialties* directly deals with a breach of contract cause of action.[6] In that case, the court reversed a dismissal of the defendant's counterclaim for breach of contract, finding that the allegations of the plaintiff's inadequate performance of repairs were sufficient to sustain the counterclaim. *Cooling Tower Specialties*, 889 N.Y.S.2d at 348. But that case and the two others cited by the Trustee are distinguishable because they all involve contracts to perform specific work that can be judged on an objective scale, such as building a home or repairing machinery. *See Cooling Tower Specialties,* 889 N.Y.S.2d 347 (agreement to repair cooling tower); *Wiernik*, 873 N.Y.S.2d 673 (architectural service contract in connection with certain renovations to plaintiff's home); *Westminster*, 554 N.Y.S.2d 300 (contract to construct residence). The same cannot be said with the Contract here. Control Risks was contracted to assess Lehr's security risk, which is a subjective assessment unlike construction or repair work. Thus, the Trustee's allegations here amount to little more than a

---

[6] The facts of the other two cases shed no light on the dispute in this case. In *Wiernik*, the court reversed the order of the trial court and granted one individual defendant's motion to dismiss the complaint. 873 N.Y.S.2d at 676. The defendant in question was the office manager of the architectural firm, and the court found that, as the firm's employee, he could not be held personally liable for the firm's alleged breach of contract. *Id.* at 675. The court in *Westminster* affirmed the trial court's order dismissing a third party cause of action for fraud because that cause of action was based solely upon the failure to perform contractual promises of future acts. 554 N.Y.S.2d at 302.

9

claim for breach of an implied warranty, which is not an action recognized under New York law for service contracts.

Even if the Trustee had sufficiently alleged a breach, the Trustee did not allege facts showing how the purported breach was the cause of any damage to Lehr. A party must prove damages to establish a cause of action for breach of contract. *Rexnord*, 21 F.3d at 525. In the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint, and the pleadings must set forth facts showing the damage upon which the action is based. *Gordon v. Dino De Laurentiis Corp.*, 529 N.Y.S.2d 777, 779 (App. Div. 1st Dep't 1988) (dismissing cause of action where complaint alleged in boilerplate fashion that defendant disclosed confidential information to a third party and that as a consequence plaintiffs were damaged in amount of $35 million). The court in *Gordon* found that the complaint was fatally deficient because it did not demonstrate how the alleged breach of the parties' confidentiality agreement caused plaintiffs any injury. *Id.* Extraordinary damages do not directly flow from a breach of contract, and thus "are recoverable only upon a showing that they were foreseeable and within the contemplation of the parties at the time the contract was made." *See American List Corp. v. U.S. News & World Report, Inc.*, 75 N.Y.2d 38, 43 (1989).

The Trustee asserts that Control Risks failed to deliver a report that complied with the requirements of Regulation 132. As discussed above, Regulation 132 provides guidelines for employees who seek to exclude certain security-related travel expenses from their income. With respect to damages, the Trustee merely alleges that "[f]ollowing the date of the Report, Lehr expended over $6.1 million in private jet travel for Lazar and Coffey," and that "Control Risk's [sic] conduct was a proximate cause of damages suffered by Lehr in an amount not less than $6,111,283.99." Amended Compl. ¶¶ 33, 35. Much like *Gordon,* however, the Trustee has not

10

alleged facts that demonstrate how Control Risks' alleged failure to comply with Regulation 132 caused $6.1 million in damages. Instead, the Trustee relies on the conclusory statement that Control Risks' conduct was "a proximate cause" of damages suffered. *Gordon*, 141 A.D.2d at 436. Notably, the Trustee did not allege that, but for the Report, Lehr would not have expended any of the $6.1 million on private jet travel. In fact, the Report suggests that Lehr was already providing private jet travel for Lazar and Coffey before Control Risks' Security Review. *See* Report at 9 ("expenditures relating to the company provided . . . private aircraft . . . should be maintained"); *id.* at 10 ("Travel Security" section reviewing security protocol at the time). Given this background, the Amended Complaint's deficiency on damage allegations is problematic, particularly given the significant amount of alleged damages—$6.1 million—compared with the far more modest sum of $17,600 paid by Lehr for the services by Control Risks. *See American List Corp.*, 75 N.Y.2d at 43 (extraordinary damages must have been foreseeable and within the contemplation of the parties at the time the contract was made).[7]

      The issue of damages to Lehr becomes even less clear upon review of Regulation 132, which only advises when an employee can exclude the excess costs of the security measures from his income. The Amended Complaint did not allege that Coffey or Lazar excluded such expenses on their tax returns or whether the IRS took issue with such an exclusion. Nor did the Trustee allege if or how the exclusion of these costs from an employee's income had any negative impact on Lehr. In sum, the Trustee did not plead sufficient facts to demonstrate how Control Risks' alleged failure to produce a report compliant with Regulation 132 caused Lehr the $6.1 million in damages claimed.

---

[7] While not relevant for the Court's determination on the Motion, the Amended Complaint does not identify who at Lehr approved these travel expenditures. This fact might become relevant to the merits of the dispute given questions of impropriety and corruption at Lehr, which resulted in the appointment of a Chapter 11 trustee at the beginning of this case.

## CONCLUSION

For the reasons set forth above, Control Risks' motion to dismiss is granted. The Defendant is directed to settle an order on three days' notice.

Dated: New York, New York
      May 27, 2014

                                      */s/ Sean H. Lane*
                                      **UNITED STATES BANKRUPTCY JUDGE**